Good morning, Your Honors, and may it please the Court. Kathleen Sullivan for Dr. Grusd and the defendant companies. This case involves a novel prosecution on multiple federal fraud counts premised on the idea that there were bribes paid for the referral of workman's compensation patients in violation of California law. The bribery instructions were crucial to the case, and they were fatally erroneous. All four of them. Well, fatally is, I guess, the question for us. If erroneous, the question is whether they were harmless beyond a reasonable doubt because of the overwhelming evidence of guilt. Correct, Your Honor. And let me explain why the error was not harmless. If I could first describe the error. The error was the failure to require that a bribe be an exchange of something of value in exchange for an unlawful act. Now, why this is not... Could you, could I interrupt you for a moment? Because you said this was a novel prosecution. So could you explain to me, could you explain simply how it worked and why it is so novel? Yes, Your Honor. The reason is that workman's compensation statutes are different from Medicare, Medicaid, CHIP statutes. They have their own statutory structure under California law. And the most important thing I have to say to you today, and in answer to Judge Graber's crucial question, is the instructions here were not harmless because the structure of workman's compensation law in California makes it permissible to make some kinds of payments in order to procure doctor referrals of workman's compensation payments. That's different from Medicare, Medi-Cal. And the reason, and Your Honor, if I, the novelty comes from the government's ignoring the fact that there can be lawful payments by, for example, Dr. Gruce, the radiologist, to, for example, the Martinez's, the alleged cappers, marketers, depending on your phrase, your side of the case, Dr. Gruce could lawfully pay the Martinez's to solicit a doctor like Dr. Riggler, the cooperating witness, to refer patients to Dr. Gruce for MRIs. How do I know that's lawful, Your Honor? Don't take it from me. Take it from the authoritative decision of the California Court of Appeal in the Doosmore case, cited in our briefs, 1998 case, and Doosmore authoritatively construes Section 650B of the Business and Professions Code to permit exactly the kind of payment Dr. Gruce, alleged in his defense, he was paying. Now, Your Honor, here's the novelty. If it was legal for Dr. Gruce to pay the marketers to solicit Dr. Riggler's prescription of the patients for the MRI, then it was crucial for the court to distinguish to the jury unlawful payments from lawful payments. And Judge Graber, there's the harm. It is not harmless. Which payments were lawful? The payments to the Martinez's would be lawful under 650B as interpreted as Doosmore if they are made from Gruce to the Martinez's so that the Martinez's could solicit patient referrals from Dr. Riggler. As long as... He was at...Martinez was acting as a kind of an agent... For both sides. For both, yeah. That's exactly right. And that's legal under California Workman's Compensation Law. And that's what the court missed by failing to distinguish lawful from unlawful acts. And, Your Honor, that's the key to the fatal part of the instruction. Well, the purpose of workers' comp law is to provide compensation for people who were injured on the job. That's right, Your Honor. So the reason for permitting the payment for solicitation of the people who had been injured is what? Oh, well, Your Honor, it's legal in California to solicit Doosmore... I understand that. My question is why, how does that work in the system? Why would they... Sure, Your Honor. What the system wants to have is patient referrals. No radiologist is the initial prescribing doctor. The prescribing doctor here was Dr. Riggler. If Dr. Riggler sees a patient, he may not have efficient access to information about all the available radiologists in the area. It is permissible under California law, Business and Professions Code 650B as interpreted in Doosmore, to pay solicitors to get the word out and to enable the prescribing doctor. But Council, Doosmore did not concern Labor Code Section 139.3. Is that correct or incorrect? That's correct, Your Honor. So here's the statutory path here is the Labor Code, you have to read 139.3 of the Labor Code. Which says it's unlawful for a physician to offer, deliver, receive, or accept any rebate, refund, commission, preference, patronage, dividend, discount, or other consideration whether in the form of money or otherwise as compensation or inducement for a referred evaluation or consultation. Isn't that exactly what happened here? Your Honor, that's the description of Dr. Riggler. Dr. Riggler is the prescribing physician. I want to make two points about the record, Your Honor, just as background. There is no evidence in the record that Dr. Grust ever paid anything to Dr. Riggler. There's no evidence of payment from Grust to Riggler anywhere in the record. And point two, Your Honor, there is no evidence that Dr. Grust ever knew before or after Riggler became a government cooperator that the Martinez's were paying kickbacks to Riggler. ER 379 is Alex Martinez's admission on exactly that point. He said only Riggler and Rubin and Alex Martinez knew about the payment. So the backdrop to this, Your Honor, is there is no evidence in this case to support a Grust payment to Riggler. But Judge Graber, the statutory path takes you to two more places. You need to look also at Labor Code 3215. These are reprinted in the back of the blue brief in the addendum, which says except as otherwise permitted by law, anyone who offers a kickback as compensation for referring a patient is unlawful. It's that crucial clause, Your Honor, that gets us to 650B and Dewsmore. Because 650B, which is a general statute, the Business and Professions Code, is the otherwise permitted by law. The exception to 139.3 and 3215 of the Labor Code is delimited by section 650B of the Labor, of the Business and Profession Code. Now, in simple language, Your Honor, what the problem here is bribes were at the core of the case. And the instructions never said a bribe has to be in exchange for an unlawful act. Four sets of counts. There's no bribery instruction whatsoever for the honest service wire fraud count. Government's admitted that was error. That's the, that omission is at excerpts of record 60506. Second, there's no bribery instruction whatsoever on the healthcare fraud count. That omission is at 607 to 608. Then we've got two erroneous instructions. The honest services mail fraud instruction at ER 605 is erroneous because it says a bribery is something in exchange for one or more acts by Dr. Riggler in his capacity as a physician. But just as in McConnell, Governor McConnell couldn't be found guilty, according to the Supreme Court, for taking money for anything he did in his course of customary acts as a public official. It had to be for an official act. So to here, it should have been specified that there could be no payment to Riggler via the Martinez's for unlawful activity. And I know it's a little confusing, but remember there's no evidence Groust ever paid Riggler and there's no evidence Groust ever knew that the Martinez's ever paid Riggler, which they only did after the FBI told Riggler to hit them up. There is no, therefore the key issue in the case for the jury to decide, but it wasn't properly instructed to do so, is was the flow of payments from Groust to the Martinez's lawful or unlawful? And without an instruction that said it had to be for an unlawful act, they didn't have a chance to buy the theory of the defense. The Travel Act instruction is even worse. That's at ER 609. That instruction said bribery means giving something of value in exchange for one or more acts by that person and not all acts are unlawful. So those are the four errors. They're harmful, they're not harmless beyond a reasonable doubt, Judge Graber, because they permitted the jury to believe every word Dr. Groust said and still convict him because they were told any payment that flows toward the Martinez's is unlawful. And that is incorrect as a matter of law. Now, I don't want to lose my chance to cover the constructive amendment. If there are no further questions on the bribery issue. Well, I still don't. The reason that it's lawful to pay your agent to get the doctors to refer you the patients is what is the California system trying to accomplish? Is it trying to make sure that those patients get to the specialized services or what? It was a special amendment. It's explained in Duesmore that the legislature amended the intermediaries from operating and the legislature thought for some good public policy reason it was efficient to have the intermediaries have a market, go-betweens, so that workers could get to doctors and the doctors could get them services. There's no obvious reason. Okay. Your Honor, it's California law and it wasn't the instruction. 650B, there's a separate instructional error in failing to charge 650B because the court charged in the Travel Act part of 650 without the exception. Okay. Your Honor, the constructive amendment, if you don't agree with us on the bribery instructions requiring reversal in a new trial, we respectfully submit that there was a classic constructive amendment here under Shipsey and under Ward. This was a case in which the government chose to charge the case with 45 very specific counts naming very specific fraudulent statements, alleged fraudulent statements. Thirty-nine of them went to trial and the district court did not charge a single one of the thirty-nine specific fact patterns to the jury. Twenty-nine of those, twenty-eight of those specific counts as the government chose to charge them required that the fraudulent statement be found. I have not violated Labor Code section 139.3. The court never told the jury that it had to find, as to any of those twenty-nine counts, that Dr. Grust had made that statement or that it was false or that he knew it was false. Not made. Now, similarly, as to the other eleven statements, the court did not instruct the jury as to any of the content of the other eleven alleged counts that went to the jury. That is a constructive amendment. You may say, well, wasn't it okay that there was sort of background fraud? And the answer is no. And I'd like to point the court to two specific passages in the district court's instructions, which I think reveal the constructive amendment. The district court said the jury could find fraud for a variety of reasons. That's excerpts of Record 596. Five pages later, at excerpts of Record 604, the district court said, it doesn't matter if the mailed material was false. And when the government chooses to say the gravamen of the offense is sending out a false statement that I complied with 139.3, and that when it wasn't true, we say it was true because of 650B and the exception, the carve-out, if you don't tell the jury they have to find that, and you actually tell the jury not to bother to find if that statement was fraudulent, that's a constructive amendment. And we respectfully suggest a new trial is required under Shipsie and Ward. Your Honor, last, I'd like to be, if I can try to reserve some time for rebuttal, I just want to touch briefly on this. You're using it, but that's okay. Your Honor, on sentencing, if you do nothing else here, remand for resentencing. The court legally erred in finding Workman's Comp, a government health care program, and presuming all loss, all billings were intended loss. Even if you disagree with that, Dr. Grews plainly rebutted the presumption that he, any presumption that he intended all the billings to be lost. There's evidence, and I would commend the court's attention to further excerpts of record, pages 9-18, FER9-18, copious evidence showing that Dr. Grews intended much less of a loss to the government because there was 80%, there's a fee cap schedule, only 80% of the claims would be paid and only 90% of value. And last, Your Honor, back to these fees, okay. There was a legal error on sentencing. This case, the court treated the conduct here as if it had no fair market value. That was legal error. There was no evidence that the services here were not medically necessary, no evidence. All of the evidence was that they were medically necessary. I'd commend the court's attention to SER9-27. Dr. Riggler, the government's own cooperator, said everything was medically necessary. I'd commend the court's attention to ER402-03, where Dr. Altman, also a government witness, said all the procedures were medically necessary. This case should not have been sentenced as if every, as if the MRIs were not performed at all. I respectfully request reserving the rest of my time to Rebecca. Thank you. Do you have a little over a minute? Good morning. May it please the Court. Nicole Reese Fox, the United States. These jury instructions when read as a whole and in context of this case made it impossible for the jury to convict Dr. Grust if it had concluded that he was paying the Martinez's for legitimate marketing services. The only way that the jury could have convicted Dr. Grust is if they concluded, as the great weight of the evidence showed, that Dr. Grust knew that when he was making those payments, he was paying the Martinez's for those Riggler referrals. If you look at the honest services mail fraud instruction, which is at ER144, the alleged scheme or plan was to deprive patients of their right to Dr. Riggler's honest services. The payment of legitimate marketing fees to the Martinez's would not have deprived those patients of that right to the honest services. And that's why the bribery definition we submit is also a quid pro quo in isolation. It's a quid pro quo that is the intent to give Dr. Riggler something of value for one or more acts by Dr. Riggler in his capacity as a physician. Payments to the Martinez's for legitimate marketing would not have satisfied that definition. Legitimate marketing is what, exactly? It is payments to a marketer. So Alex Martinez actually testified what he viewed marketing as. He said, we weren't doing marketing. Every single witness said, there was no marketing. Ruben Martinez said, I did not want to do marketing. I was here to service Dr. Riggler. But what does the word marketing mean? What Alex Martinez said is, it's passing out flyers saying, here's this company that does radiology, you can send your MRIs there. The marketer can help with scheduling. So if Dr. Riggler made the independent judgment within his fiduciary duty to his patients, that looking at that flyer or that brochure of information, this would be a good place to send his patients and made that decision in his independent judgment. He could ask the Martinez's as Groot's representatives to help with scheduling and other things. But the fundamental idea of marketing is that they're working as Dr. Groot's representatives. They're not working as Dr. Riggler's representatives. And what they told the jury over and over again is we were here to service one doctor and one doctor only. They, meaning? Alex and Ruben Martinez. They managed Dr. Riggler's clinic. They viewed themselves as running Dr. Riggler's clinic. Alex Martinez sent an email to Dr. Groot's co-defendant where he said, I'm Alex Martinez. I run Dr. Riggler's three clinics. There was no question from the evidence that the jury heard that these payments were not for legitimate marketing. So there's no risk that the jury could have convicted Dr. Groot of any of these counts had they believed his story. What the evidence showed, what the jury's unanimous verdict on every single count showed is that the jury didn't believe his testimony. And neither did the district court when the district court said that it believed that he had perjured himself. I have a question about the sentencing issue. And that is that the court did not reduce the amount of loss by the fair market value of services that were medically necessary that were provided. And it seemed to me relatively clear that at least some of the services were medically necessary. There was testimony to that effect from Dr. Riggler and I think possibly others as well. That at least I didn't send someone for an MRI they didn't need. So why wouldn't the court have had to figure out what the fair market value of that was and reduce the loss amount accordingly? The district court gave several reasons for refusing that offset. One, she talked about the enormous pressure that Dr. Groot placed on the Martinez's to submit as many referrals as possible. That seems irrelevant as to whether they're medically necessary. Well, the pressure is an incentive. It's an incentive, but it's an incentive that if it's not carried out at least it's clear that at least as to some people these were medically necessary procedures. And if you have a medically necessary thing, it doesn't make it not necessary. And indeed Dr. Riggler testified that everything was medically necessary. He did. So why did the trial judge not take that into consideration? She did. And she said that it was impossible. And let me follow up, I'm sorry. Is this a government health program? We believe that it is. Is it funded federally at all? It doesn't need to be funded federally. It needs to be funded by government, by state government qualifies. And the California government, the taxpayers of California fund this program in a variety of ways. So that's what led to the district court applying the presumption that this was the amount of loss. So as to the offset, the only question then is who bears the burden of proving that no offset for legitimate services should be applied. And the district court found that applying the presumption that Dr. Gruce had not proven that an offset should be applied. The other reason that she gave was that what the insurance companies paid for, what these patients expected were services that were rendered in Dr. Riggler's professional judgment and in line with his fiduciary duty. And it was a violation of that duty, a violation of his professional judgment to send patients to a provider because the provider was paying. How does that mesh with the requirement of the guidelines that the court shall reduce the loss by the fair market value of services provided that were appropriate? Again, it may be that the patients, had they known, would have rather gone to another doctor. But that doesn't mean that the service was not medically necessary. I just, they seem like a complete disconnect to me, the reasoning of the court. I understand. I would only emphasize that this loss calculation is reviewed for clear error. And I don't believe it's illogical or implausible. Well that's, I'm just saying, speaking only for myself, it seems quite illogical to me. And also doesn't really take account of the testimony that even though people felt they had to send to this doctor, they didn't send for non-problems. They sent only for actual need. There was testimony, for example, that where they were referring for multiple MRIs. And I'd be happy to provide, I don't have the citation, I'd be happy to provide it. But where they were sending referrals for multiple MRIs, they were going to get a higher kickback fee if they did it over consecutive days as opposed to having the patient go and get all her MRIs in one day. So yes, maybe she needed all of those MRIs, but she had to then go twice in order to up their... But that has to do with the amount of credit, it seems to me, not whether credit is owed. That is, the fair market value may be vastly reduced because of what you say, but it still doesn't tell me why there shouldn't be any offset. And the other point I would make, I understand the court's concern. As the district court applied the rubric, the presumption applied, and so it was Dr. Bruce Burden to show that offset, and his view was this is a no pecuniary loss case. What they wrote in their sentencing memorandum is he didn't commit a crime, he committed no fraud, he did nothing wrong, and there's been no pecuniary loss. So that's what the court was looking at when she was trying to determine how do I... I know, but the guidelines require an offset when the evidence is there, so... Well, what is the evidence that some of this stuff was not medically necessary? There was little testimony about it. There was, I believe that Julian Garcia testified that there would be times where they would refer for two limbs where only one was necessary, but then one of the providers also testified that in his practice, if he thought one wasn't necessary, he wouldn't provide it. So I fully admit that there's not evidence that these weren't medically necessary, and that wasn't the court's reasoning. The court's reasoning is that she couldn't tell what was legitimate and what was not, because the whole purpose of the scheme was to get as much referrals to Dr. Bruce as possible. Correct. I'm not... I don't disagree with you about that, but the problem I have is that the guideline seems to require that if it was medically necessary, that the fair market value be offset. And that seems to me to have nothing to do with which physician they were sent to. And of course, because it's in the sentencing guidelines, it presumes the person's guilty of a crime related to it, or we wouldn't be talking about the sentence. I'll take one more attempt to convince you, Your Honor, but I fully understand your concern, and if we go back to resentencing, we'd be happy to try and do the work to try and figure out how this could possibly be offset, given the nature of the fraud. Well, there's a schedule of fees. There is, but that's assuming that every... that he was billing at a higher amount, yet would get credit for the fees. So if we were reducing the amount just to the fee schedule, that still doesn't account for the court's concern that these were medically necessary. I think that if the court's view is that any procedures that were medically necessary, therefore result in no loss, I think we'd have to somehow disaggregate which procedures were medically necessary and which weren't. And that would require, I guess, going back to providers, I'm not sure. Who would have the burden of proof there? Well, I think that would depend, then, if it's a government healthcare program. And the district court applied that guideline and found that the presumption was met, and therefore it was the defendant's burden to rebut that presumption. The California scheme is like other state schemes. It's established by the legislature. It's established in the California state constitution, and it administers the program. Isn't it funded by employers? It's funded by the state and by employers. It's a combined, taxpayers foot some of the bill, employers, insurers foot some of the bill. But the administration of it, so all of the agencies that ensure compliance, that deal with this lien process of who gets paid what, that's all state administrators. Are there hearing officers that determine the amounts, and they're employed by the state? Yes, yes. I think we've covered everything, but I'd be happy to answer any further questions or submit. I don't believe we have any additional ones. Thank you very much. Your Honor, it says the colloquy with the government shows you must send this back for re-sentencing. There was no evidence, Judge Schroeder. Well, if it's the defendant's burden to demonstrate, let me finish the question. I'm sorry, Your Honor. If it is the defendant's burden, and there is some evidence on both sides, which I think there is, there was one person who testified that something seemed unnecessary, and Dr. Wrigler said no. If it is the defendant's burden, did he simply fail to meet it because he didn't disaggregate? No, Your Honor. Let's be clear to answer Judge Watson's question. It is the government's burden. This Court's decision in U.S. against Ruthgard, 116F3R1270, cited in our briefs, makes it absolutely clear in Judge Noonan's words for the Court, the burden, as always, is on the government to establish what services were not medically necessary. Well, is that true if it's a government program, too? Yes, because the burden shift is about note 3F. The burden shift is about intended loss. And this Court's decision in United States against Popoff says, if it's a government program, which again, Judge Watson, it most clearly is not. It is not a government-funded program at all. It is entirely employer-funded, including by California when it's an employer. But Your Honor, Popoff allows a shift on intended loss. That refers to note 3F. 3E is the relevant provision that says that you have to take into account, have to take into account, as you said correctly, Judge Graber, the provision of fair market services. There was zero evidence that there were no medically necessary procedures. Your Honor refers to the doctor at ER402, 403, Dr. Altman. The government misrepresented Dr. Altman's testimony. We corrected it in the gray brief. Dr. Altman said, sometimes we sent patients, and we didn't think the tests were medically necessary, and the government failed to tell you the next sentence on 403. And then we did not perform them. There was zero evidence of medically unnecessary procedures, but it was the government's burden. They failed to meet it. You must send it back for resentment. Thank you, Counsel. Thank you, Your Honor. The case just argued is submitted. We appreciate the arguments of both counsel.
judges: Schroeder, Graber, Watson